IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEON CAPITAL GROUP, LLC, et al., | § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | |
| PRINCETON EXCESS & SURPLUS LINES INSURANCE COMPANY, et al., | | No. 3:24-CV-00098-L |
| Defendants. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On April 8, 2024, Plaintiffs Leon Capital Group, LLC, and LG Operating Company, LLC (together "LCG") filed a motion seeking dismissal of Defendants' declaratory judgment counterclaims. (Dkt. No. 19 ("Mot.").) Defendants Princeton Excess & Surplus Lines Insurance Company, General Security Indemnity Company of Arizona, Steadfast Insurance Company, Transverse Specialty Insurance Company, and Accredited Specialty Insurance Company (collectively the "Arrowhead Insurers") filed a response in opposition to LCG's motion on April 29, 2024. (Dkt. No. 24 ("Resp.").) LCG filed its reply on May 13, 2024. (Dkt. No. 25 ("Reply").)

For the reasons stated below, the undersigned concludes that Defendants' declaratory actions are mirror images of LCG's claims. The District Judge should

1

therefore **GRANT** LCG's motion to dismiss the Arrowhead Insurers' declaratory judgment counterclaims.

## I. BACKGROUND

This litigation arises from a Commercial Property Policy (the "Policy") issued to LCG by the Arrowhead Insurers. (Compl. ¶ 10.) The Policy covered several properties, including the property at issue in this lawsuit: an industrial warehouse located at 1205 Avenue H East, Grand Prairie, Tarrant County, Texas 75705 (the "Property"). (Compl. ¶ 10; Answ. ¶ 14.) The Policy became effective on April 20, 2022, and expired on April 10, 2023. (Compl. ¶ 10; Answ. ¶ 16.)

On April 27, 2022, LCG reported a theft occurrence to the Arrowhead Insurers. (Compl. ¶¶ 23, 25; Answ. ¶ 21.) LCG later reported a second theft occurrence on May 16, 2022. (Compl. ¶¶ 26; Answ. ¶ 25.)

The parties dispute the remaining facts. LCG alleges the policy fully covers the losses and that the Arrowhead Insurers should pay the total amount of loss. (*See generally* Compl.) On the other hand, the Arrowhead Insurers argue they did not owe any contractual duty on the loss dates and that even if they did, they should only be held liable for a limited portion of the damages alleged. (*See generally* Answ.) Since the current issue pending before the Court is procedural, the undersigned does not find it necessary to delve into the different factual allegations or the merits of the case.

LCG filed its complaint on January 12, 2024, alleging several causes of action such as breach of contract, violation of the prompt payment of claims act, unfair

claims settlement practices, common law bad faith, and declaratory judgment. (Compl. 9-16.) On March 18, 2024, the Arrowhead Insurers filed their Counterclaim for Declaratory Judgment and Original Answer. (*See generally* Answ.) The Arrowhead Insurers request four different declarations under the Federal Declaratory Judgment Act. (Answ. ¶ 8.) The Arrowhead Insurers requested an order from the Court declaring that:

(1) the Arrowhead Insurers owed no contractual, statutory or common law duties nor had any obligations to LCG under the Arrowhead Policy or Texas law until December 29, 2022 when LCG paid the minimum earned premium for the Arrowhead Policy.

(2) (a) The Lexington Group Policies, the Arrowhead Policy and the Arrowhead Binder should be construed together because they are separate documents executed for the same policy period, for the same purpose, for the same properties and in the course of the same transaction[;] (b) the Arrowhead Insurers agreed, severally and not jointly, to pay under the Arrowhead Policy 20% of a covered loss subject to the applicable deductible.

(3) [T]he applicable deductible for LCG's covered theft claims is 20% of the $100,000.00 ($20,000.00) per occurrence for Vacant Locations.

(4) (a) [T]he $50,000 theft sublimit for Vacant Locations in the Arrowhead Policy applies to LCG's First Theft Claim[;] (b) [t]he Arrowhead Insurers limit of liability under the Arrowhead Policy for the First Theft Claim is 20% of the theft sublimit or $10,000 excess of the applicable deductible[;] (c) [t]he $50,000 theft sublimit for Vacant Locations in the Arrowhead Policy applies to LCG's Second Theft Claim, theft is a covered peril[;] (d) the Arrowhead Insurers limit of liability under the Arrowhead Policy for the Second Theft Claim is 20% of the theft sublimit or $10,000 excess of the applicable deductible.

(*Id.* ¶¶ 48, 55, 61, 71.)  On April 8, 2024, LCG filed its motion to dismiss the declaratory action counterclaims, alleging all the claims are mirror images of LCG's breach of contract claim.

## II.  LEGAL STANDARDS

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).  Such a motion, therefore, is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief."  *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. (quoting

4

*Twombly*, 550 U.S. at 557 (cleaned up); *see also Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. And so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)).

### III.  ANALYSIS

Federal courts have broad discretion to grant or refuse declaratory judgment. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). It gives federal courts the competence to declare rights but does not impose a duty to do so. *See Public Affairs*

*Assocs. v. Rickover*, 369 U.S. 111, 112 (1962). Although "the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). The court cannot dismiss a declaratory judgment action "'on the basis of whim or personal disinclination.'" *Id.* (quoting *Rowan Cos. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir. 1989)).

When considering a declaratory judgment action, a district court must engage in the following three-step inquiry to determine: (1) whether the declaratory action is justiciable; (2) whether the court has "authority" to grant the requested declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss the action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). Justiciability is typically an issue of ripeness, whether an actual controversy exists such that the court has subject matter jurisdiction. *Id.* at 895-96. "[A]n actual controversy exists where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Id.* at 896 (citation, brackets, and internal quotation marks omitted). The question of whether an actual controversy exists is a question of law. *Orix Credit Alliance, Inc.*, 212 F.3d at 895. If the court determines that the declaratory judgment is not justiciable, that's where the inquiry ends. *Id.* Because the ripeness of a request for declaratory judgment is jurisdictional, the court must consider sua sponte even without any challenge by the parties. *See id.* When jurisdiction is based on diversity of citizenship, the court has authority to decide a declaratory judgment action. *See Sherwin–Williams Co. v. Holmes Cnty.*, 343 F.3d 383,

387 (5th Cir. 2003) (holding that district court had the authority to decide declaratory judgment suit where there was diversity jurisdiction). In the current action, it is the third factor at issue, whether the Court should exercise its discretion and dismiss the declaratory judgment counterclaims.

Generally, a declaratory judgment is unavailable to resolve disputes already pending before the court. *Albritton Properties v. Am. Empire Surplus Lines*, No. 3:04-CV-2531-P, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005) (citing *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990)). However, a defendant's counterclaim for declaratory judgment may be proper if it has greater ramifications than the original suit. *Id.* In other words, the counterclaim must do more than merely deny the plaintiff's claim; it must instead seek affirmative relief. *Id.*

"This court has previously declined in its discretion to adjudicate declaratory judgment actions that are duplicative of other claims in the same case." *Great Am. Ins. Co. v. Goin*, No. 3:15-CV-75-L, 2017 WL 4238698, at *4 (N.D. Tex. Sept. 25, 2017). Further, district courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that are mirror images of other claims in the lawsuit. *Id.* (dismissing Defendant's declaratory judgment counterclaim regarding its duty to defend and indemnify because it was a mirror image of Plaintiff's breach of contract claim) (citing *American Equip. Co., Inc. v. Turner Bros. Crane and Rigging, LLC*, No. 4:13-CV-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014)).

**A.    The Arrowhead Insurers' claims are mirror images of LCG's claims and would be better addressed in a breach of contract context.**

LCG argues that all of the Arrowhead Insurers' declaratory judgment requests are mirror images of its breach of contract claim.  (*See generally* Mot.)  The elements of a breach of contract claim under Texas law are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant[s]; and (4) damages sustained by the plaintiff as a result of the breach."  *Smith Int'l, Inc. v. Egle Grp.*, LLC, 490 F.3d 380, 387 (5th Cir. 2007).  For the following reasons, the undersigned agrees with LCG that the declaratory judgment counterclaims should be dismissed as duplicative and redundant of LCG's breach of contract claim.

  **1.   Arrowhead Insurers' first requested declaratory judgment duplicates an action already pending before the Court.**

The Arrowhead Insurers "seek a declaration that the Arrowhead Insurers owed no contractual, statutory[,] or common law duties nor had any obligations to LCG under the Arrowhead Policy or Texas law until December 29, 2022[,] when LCG paid the minimum earned premium for the Arrowhead Policy."  (Answ. ¶ 48.)  In essence, the Arrowhead Insurers allege that a condition precedent existed and LCG had not met this condition.  (*Id.* ¶ 47-48.)  And therefore, the Arrowhead Insurers claim, their duty was never triggered.  (*Id.*)

"A condition precedent to an obligation to perform, . . . , prevent[s] a duty to perform from arising except upon realization of the condition."  *Boyd v. Texas Dep't of Crim. Just.*, 780 F. App'x 145, 149 (5th Cir. 2019) (citing *Ridge Constr. Grp., Inc. v.*

8

*Newcourt, Inc.*, 78 F.3d 146, 150 (5th Cir. 1996)). Courts tend to look at the parties' intentions to determine whether a condition exists. *Note Inv. Grp., Inc. v. Assocs. First Cap. Corp.*, 83 F. Supp. 3d 707, 729 (E.D. Tex. 2015) (citing *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 727 (5th Cir. 2005)). Significantly, determining whether a condition precedent exists and whether it has been satisfied is already performed within the typical breach of contract analysis. *See id.*; *see Boyd*, 780 F. App'x at 149; *see Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1 (Tex. 1976). To further demonstrate that this issue is already pending before the Court, the Arrowhead Insurers pled failure to satisfy a condition precedent as a defense. (Answ. ¶ 146.) Thus, having it as a separate declaratory action would be redundant.

### 2. Arrowhead Insurers' second requested declaratory judgment duplicates an action already pending before the Court.

In their second requested declaration, the Arrowhead Insurers ask the court to declare that: (1)"the Lexington Group Policies, the Arrowhead Policy and the Arrowhead Binder should be construed together" and (2) that "the Arrowhead Insurers agreed, severally and not jointly, to pay under the Arrowhead Policy 20% of a covered loss subject to the applicable deductible." (*Id.* ¶ 55.) The Arrowhead Insurers allege these declarations are not duplicative of LCG's breach of contract claim. (Resp. 8.) The undersigned disagrees.

First, the Arrowhead Insurers argue the first declaration is not a mirror image of the breach of contract claim because those additional policies "are not addressed in [LCG's] Original Complaint." (*Id.*) The Arrowhead Insurers further argue that

9

the policies should be interpreted together under Texas law. (*Id.*) Whether the Arrowhead Insurers' contention is correct or not, contract construction and interpretation are issues that arise within the context of a breach of contract analysis. Contract construction includes determining which terms are part of the contract to interpret. *See e.g.*, *Tippmann Const., Inc. ex rel. Selective Ins. Co. of S.C. v. Prof'l Serv. Indus., Inc.*, No. 4:11-CV-591-Y, 2013 WL 169267, at *4 (N.D. Tex. Jan. 16, 2013) ("More interpretation issues arise in cases where the contract could be comprised of more than one document."); *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471 (Tex. 2019) (stating that when construing the meaning of a contract, "[t]he parol evidence rule bars consideration of evidence that contradicts, varies, or adds to the terms of an unambiguous written agreement."). As the Court will already have to determine which documents are part of the contract, this declaration does not introduce any new facts or issues and is a mirror image of LCG's breach of contract claim.

Then, the Arrowhead Insurers ask that the Court declare a potential damages limit under the policy. (Answ. ¶ 55(b).) They argue that "[a] determination of the rights and obligations under the Arrowhead Binder and the four Lexington Group Policies along with the Arrowhead Policy is not redundant of [LCG's] claims." (Resp. 12.) Yet, determining the rights and obligations of parties is a crucial step in a breach of contract claim. *See Albritton Properties*, 2005 WL 975423, at *3 (N.D. Tex. Apr. 25, 2005) (dismissing a declaratory judgment counterclaim requesting a no-duty declaration as duplicative because "[t]he Court, . . . must establish the parties' rights

and duties under the [contract] in order to settle the breach of contract cause of action"). Similarly here, this declaratory action is duplicative of a dispute already pending before the Court and should be dismissed. *See id.*

### 3. Arrowhead Insurers' third requested declaratory judgment duplicates an action already pending before the Court.

In their third request, the Arrowhead Insurers ask that the court declare that "the applicable deductible for LCG's covered theft claims is 20% of the $100,000.00 ($20,000.00) per occurrence for Vacant Locations." (Answ. ¶ 61.) Similarly to Declaration No. 2, this declaration addresses the parties' rights and obligations under the contract and thus is best dealt with as part of the breach of contract claim. This counterclaim, too, is duplicative of a claim already before the Court and should be dismissed as redundant. *See Albritton Properties*, 2005 WL 975423, at *3 (N.D. Tex. Apr. 25, 2005).

### 4. Arrowhead Insurers' fourth requested declaratory judgment duplicates an action already pending before the Court.

In their fourth request, the Arrowhead Insurers request four declarations. (Answ. ¶ 71.) First, they ask the Court to declare that "[t]he $50,000 theft sublimit for Vacant Locations in the Arrowhead Policy applies to LCG's First Theft Claim." (*Id.*) The second declaration requests the Court to find that "the Arrowhead Insurers Limit of liability under the Arrowhead Policy for the First Theft Claim is 20% of the theft sublimit or $10,000 excess of the applicable deductible." (*Id.*) In their third request, the Arrowhead Insurers want a declaration that "[t]he $50,000 theft sublimit for Vacant Locations in the Arrowhead Policy applies to the Second Theft Claim,

11

theft is a covered peril under the Vacancy Permit and the Vacancy Permit is subject to the $50,000 theft sublimit." (*Id.*) Finally, the Arrowhead Insurers ask the Court to declare that "[t]he Arrowhead Insurers limit of liability under the Arrowhead Policy for the Second Theft Claim is 20% of the theft sublimit or $10,000 excess of the applicable deductible." (*Id.*)

      All four requested declarations, (*Id.*), require the Court to interpret the contract to determine how much the Arrowhead Insurers could be liable for under the policy. The potential liability amount is directly linked to a party's potential obligations under a contract; as already discussed above, these issues are already pending before the Court. Therefore, the counterclaim should be dismissed. *See Fed. Nat. Mortg. Ass'n v. K.O. Realty, Inc.*, No. 3:13-CV-2781-L, 2014 WL 3900619, at *9 (N.D. Tex. Aug. 8, 2014) ("[D]istrict courts in this Circuit regularly reject declaratory judgment claims seeking resolution of issues that are the mirror image of and will be resolved as part of other claims in the lawsuit.") (citing *American Equip. Co., Inc. v. Turner Bros. Crane and Rigging, LLC*, No. 4:13–CV–2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014)).

      Regardless of how the Arrowhead Insurers try to frame the issues, "[t]he core issues of this controversy concern . . . whether defendants breached the contract[]," and what the parties' liabilities and rights are under the contract. *Kougl v. Xspedius Mgmt. Co.*, 3:04-CV-2518-D, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005). Those questions will be resolved in the context of LCG's breach of contract claim. *Id.* "Separate declaratory judgment actions would be redundant." *Id.* (citing

*Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.*, 3:00-CV-906-D, 2002 WL 257573, at *11 (N.D. Tex. 2002) (dismissing declaratory judgment action that sought resolution of substantive claims that were already the basis of the lawsuit). The Arrowhead Insurers additionally claim their declaratory judgment actions will serve judicial economy; however, this Court has previously held that when a claim is duplicative, "it serves no useful purpose and does not serve the purposes of judicial economy." *Fed. Nat. Mortg. Ass'n*, 2014 WL 3900619, at *9. As all of the Arrowhead Insurers declaratory judgment actions are mirror images of LCG's claims, they do not serve the purpose of judicial economy.

**B.      The Court should decline to re-label the Arrowhead Insurers counterclaims as additional defenses.**

Lastly, the Arrowhead Insurers requested in the alternative that if the Court finds the counterclaims redundant, it should re-label those counterclaims as additional defenses to serve justice. (Resp. 13-14.) The undersigned does not agree. The Arrowhead Insurers have already pled condition precedent as a defense in their original answer, (Asnw. ¶ 146.), thus there is no need for the Court to re-label the first declaration. As for declarations 2-4, the Arrowhead Insurers are free to argue those issues in the breach of contract analysis. If they believe more is needed, the Arrowhead Insurers may request leave of Court if they wish to amend their live pleading, which they have not done thus far.

13

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the District Judge **GRANT** Plaintiffs' motion to dismiss the declaratory judgment counterclaims. (Dkt. No. 19.)

**SO RECOMMENDED** on November 8, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).